IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Pastor Rosanna L. Coleman and Minister Norman V. Whiteside, | Case No: 2:21-cv-2103 |
| Plaintiffs, | Judge Graham |
| v. | Magistrate Judge Jolson |
| Allegheny County, PA PFA Unit, *et al.*, | |
| Defendants. | |

Opinion and Order

Plaintiffs Rosanna Coleman and Norman Whiteside, proceeding *pro se*, bring this action under 42 U.S.C. § 1983 against various defendants. Plaintiffs allege that defendants violated their civil rights in connection with child custody matters involving Coleman's grandchildren. Coleman alleges that she should have custody of the grandchildren, but they have been forcibly removed from her care based on false allegations of wrongdoing made by the children's mother.

This matter is before the Court pursuant to the Court's March 23, 2022 Order requiring plaintiffs to effect service of process on two of the defendants. It is also before the Court on four separate motions to dismiss filed by certain other defendants.

**I.   Background**

Plaintiff Coleman alleges that she "is believed to have custody of two minor children, A.C. and C.C." Am. Compl., ¶ 3. The children's mother is defendant Shanekqua Coates, who is Coleman's daughter. The two minor children resided with Coleman in Columbus, Ohio. Coleman's residence was also "the physical location of her church, the Church of Pure Love and Truth." *Id.* Plaintiff Whiteside is alleged to have been a minister and to have had an office at Coleman's residence. Whiteside alleges that he was a mentor to the children.

According to the complaint, Whiteside made a report of child abuse against Coates on December 1, 2020. It is unclear to whom Whiteside made his report. On December 3, defendant Bryant Dickerson, an agent of defendant Franklin County Children Services ("FCCS"), interviewed

1

the children at Coleman's residence. Dickerson then contacted Coates and apprised her of Whiteside's report.

On December 7, 2020, Coates allegedly made false claims about Coleman and Whiteside to the Allegheny County Court of Common Pleas, Family Division, Protection From Abuse Unit (the "Allegheny County Court PFA Unit"). It is unclear from the face of the complaint what connection the Allegheny County Court PFA Unit has to plaintiffs, Coates or the children, but the Court notes that plaintiffs have attempted to effect service of process on Coates at an address located in Allegheny County, Pennsylvania.

According to the complaint, Coates falsely told the Allegheny County Court PFA Unit that she had custody of the children and that plaintiffs were in some way interfering with her custodial rights. The complaint alleges that the Allegheny County Court PFA Unit issued "Protection From Abuse orders" against plaintiffs even though it should have known that Coates did not have custodial rights.

On December 8, 2020, defendant Franklin County Sheriff Dallas Baldwin, having received the Protection From Abuse orders, instructed his deputies, defendants Bryan Sibbalds and Ronald Pierce, to forcibly remove the children from Coleman's residence. The complaint alleges that defendants Sheriff Baldwin and Deputies Sibbalds and Pierce should have known that they had no authority to remove the children.

The complaint further alleges that "Coleman exercised her First Amendment Right to protest the actions" of defendants. Am. Compl., ¶ 18. This allegedly caused certain defendants to retaliate against Coleman. Defendant Laura Peterman, the children's guardian *ad litem*, allegedly prevented Coleman from having custody or being able to visit the children "for a prolonged, unlawful period of time." *Id.* Defendant Dickerson, an FFCS agent, allegedly prevented Coleman from seeing or talking to the children. And when Coleman attempted to reestablish custody, defendant Rasheye Cobb, another FCCS agent, allegedly caused onerous restrictions to be imposed on her – though the complaint does not identify what those restrictions were.

Defendant Peterman also is alleged to have retaliated against plaintiff Whiteside by requesting the issuance of a "no contact order" from a magistrate judge which prevented Whiteside from having any communication with the children.

Plaintiffs assert that the removal of the children from Coleman's residence constituted an unreasonable search and seizure under the Fourth Amendment to the United States Constitution. They also allege that they had a protected liberty interest in raising and mentoring the children and

2

that defendants deprived them of that interest without due process. Plaintiffs further assert that defendants retaliated against them for exercising their First Amendment rights.

## II. Service of Process

On March 23, 2022, the Court ordered plaintiffs to effect service of the Amended Complaint on defendants Coates and the Allegheny County Court PFA Unit within thirty days. Plaintiffs successfully effected service upon the Allegheny County Court PFA Unit on April 8. *See* Doc. 32. However, plaintiffs have not submitted proof of service on Coates of either the Complaint or the Amended Complaint. Their attempt to serve her by certified mail at an address in Allegheny County, Pennsylvania was returned to sender. *See* Doc. 40. Accordingly, the Court DISMISSES the claims against defendant Coates for insufficient service of process. *See* Fed. R. Civ. P. 12(b)(5).

## III. Motion to Dismiss Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Iqbal,* 556 U.S. at 679; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Twombly*, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

*Id.* at 678. Though "[s]pecific facts are not necessary," *Erickson*, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," *Twombly*, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. Discussion

### A. Franklin County Children Services

FCCS moves to dismiss the claims against it on the basis that the Amended Complaint fails to identify a policy, custom or practice for which FCCS could be held liable under § 1983. The Court agrees.

Ohio law authorizes counties to create children services agencies. O.R.C. § 5153.01, *et al.*. A local governmental entity, like FCCS, cannot be held liable under § 1983 solely because it employs a tortfeasor; that is, it cannot be held liable on a *respondeat superior* theory. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A local governmental entity may be held liable only when the entity's policy or custom was a "moving force" behind the alleged constitutional deprivation by its employees or agents. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Monell*, 436 U.S. at 694. "A 'custom' for purposes of *Monell* liability must 'be so permanent and well-settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) (quoting *Monell*, 436 U.S. at 691).

Here, the Amended Complaint does not allege the existence of a policy, custom or practice by FCCS that caused its agents to deprive plaintiffs of their constitutional rights. FCCS agent Dickerson allegedly retaliated against Coleman for her exercise of First Amendment rights by preventing her from having contact with the children. Agent Cobb allegedly retaliated by making it onerous for her to reestablish custodial rights.[1] There are no allegations in the Amended Complaint

---

[1] Plaintiffs have asserted individual-capacity claims against Dickerson and Cobb. Both of these defendants have filed answers to the Amended Complaint.

4

that would support an inference that the alleged retaliatory acts of Dickerson and Cobb were taken pursuant to an FCCS policy, custom or practice.

Accordingly, FCCS's motion to dismiss is GRANTED.

### B.   Franklin County Sheriff Baldwin

#### 1.   Official Capacity Claim

Plaintiffs have sued Franklin County Sheriff Dallas Baldwin in his official and individual capacities for the alleged wrongful removal of the minors from Coleman's residence. They have also sued the Franklin County Sheriff's Office. The Court agrees with defendants that the official capacity claim against Sheriff Baldwin should be treated as one-and-the-same as the claim against the Sheriff's Office. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."); *Monell*, 436 U.S. at 690 n. 55 (an official capacity suit is "another way of pleading an action against an entity of which an officer is an agent").

The Sheriff's Office moves to dismiss the claim against it on the grounds that the Amended Complaint fails to allege the existence of a policy, custom or practice which led to the constitutional deprivations. The Court finds that, while the Amended Complaint did do not expressly allege the existence of a policy or custom, one could draw a reasonable inference that the Sheriff's Office adheres to a practice of enforcing court orders, like the child protection order issued by the Allegheny County Court PFA Unit.

But even though the Amended Complaint clears the hurdle of alleging a policy or custom, the official capacity claim against the Sheriff's Office nonetheless fails. The problem for plaintiffs is the source of the policy – it is not of the Sheriff's own making, but it is dictated by state law. Ohio law requires a county sheriff to execute warrants, writs, and other orders "issued by a proper and lawful authority" of the state or "of any other state." O.R.C. § 311.07 (providing that a county sheriff "shall" execute such court orders). In order for *Monell* liability to apply, the policy at issue must represent a choice made by the municipality, and not a mandate of the state. *See Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008) ("[I]n addressing the conscious choice requirement, we agree with all circuits to address state laws mandating enforcement by municipal police officers that a municipality's decision to honor this obligation is not a conscious choice. As a result, the municipality cannot be liable under *Monell* in this circumstance [of complying with a state law mandate.]"); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives.").

5

Because the policy which plaintiffs challenge (the Sheriff's execution of a court order) is embodied in state law and leaves no room for discretion, the claim against the Sheriff's Office is barred by sovereign immunity under the Eleventh Amendment. *See Enoch v. Hamilton Cnty. Sheriff's Office.*, No. 1:16-CV-661, 2017 WL 2210515, at *10 (S.D. Ohio May 18, 2017) ("[C]ounty officials are considered 'an arm of the State' for Eleventh Amendment purposes when they are sued for acts that involve 'simply [ ] complying with state mandates that afford no discretion.'") (quoting *Crabbs v. Scott*, 786 F.3d 426, 430 (6th Cir. 2015)); *Vives*, 524 F.3d at 353.

### 2. Individual Capacity Claim

The Amended Complaint alleges that Sheriff Baldwin instructed his deputies[2] to enforce the child protection order issued by the Allegheny County Court PFA Unit. The Court finds that plaintiffs have not alleged any wrongful conduct committed by Sheriff Baldwin. *See Gregory v. Shelby Cty., Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000) (to prevail on a § 1983 claim, plaintiff must show that defendant deprived him of a right secured by the Constitution or laws of the United States). The Amended Complaint alleges that the Allegheny County Court PFA Unit issued the child protection order without verifying the accuracy of the allegations made by Coates against plaintiffs. But there are no allegations that Sheriff Baldwin knew or had reason to know of the alleged defect in the child protection order.

Accordingly, the motion to dismiss of the Franklin County Sheriff's Office and Franklin County Sheriff Dallas Baldwin is GRANTED in its entirety.

### C. Guardian *Ad Litem* Peterman

Peterman moves to dismiss the claims against her on the grounds that she is immune from liability for her conduct as guardian *ad litem*. Peterman is correct.

Judicial immunity extends to those "who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). The Sixth Circuit has twice held that guardians *ad litem* are entitled to this "quasi-judicial immunity." *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984); *Arsan v. Keller*, 784 Fed. App'x 900, 908 (6th Cir. 2019). "Guardians *ad litem* are entitled to such immunity when they act within the scope of their roles as 'advocate[s] for the child in judicial proceedings.'" *Arsan*, 784 Fed. App'x at 908 (quoting *Kurzawa*, 732 F.2d at 1458). This allows guardians *ad litem* "to function without the worry of possible later harassment and intimidation from dissatisfied parents." *Kurzawa*, 732 F.2d at 1458.

---

[2] Deputies Sibbalds and Pierce were both sued in their individual capacities and have filed answers to the Amended Complaint.

"Quasi-judicial immunity shields guardians *ad litem* for . . . the actions they take while investigating, gathering information about the parents and children, and reporting to the court their custody recommendations." *Arsan*, 784 Fed. App'x at 908; *see also DeFibaugh v. Big Bros./Big Sisters of Ne. Ohio*, No. 1:17 CV 645, 2017 WL 4620795, at *8 (N.D. Ohio Oct. 16, 2017) (holding that a guardian *ad litem* was immune from § 1983 liability because "plaintiffs have not alleged facts to demonstrate that [defendant's] misconduct took place outside of her role as GAL"); *Chee v. Washtenaw County, Mich.*, 2008 WL 2415374 (E.D. Mich. June 12, 2008) ("Because plaintiff accuses Towler of misconduct in her role as guardian *ad litem*, Towler is entitled to absolute immunity from suit and must be dismissed from this lawsuit.")

Here, the Amended Complaint alleges that "Defendant Peterman was appointed guardian *ad litem* and wrongfully used her role as GAL." Am. Compl.., ¶ 10. Peterman's alleged wrongful conduct was (1) "supporting" the Allegheny County Court PFA Unit's protection order by preventing Coleman from visiting the children and (2) recommending to a magistrate judge that Whiteside not have contact with the children. *Id.* The Court finds that immunity shields Peterman because the alleged misconduct took place in her role of complying with court orders and making a recommendation to the court.

Accordingly, Peterman's motion to dismiss is GRANTED.

### D. Allegheny County Court PFA Unit

The Allegheny County Court PFA Unit has moved to dismiss the claims against it on the grounds of Eleventh Amendment immunity. The Court agrees.

The Allegheny County Court PFA Unit is part of the Unified Judicial System of the Commonwealth of Pennsylvania. 42 Pa.C.S.A. § 301(4). Pennsylvania's court system is part of the Commonwealth and is therefore entitled to the state's Eleventh Amendment immunity. 42 Pa.C.S.A. § 102; *Benn v. First Jud. Dist. of Pa.*, 426 F.3d 233, 240–41 (3d Cir. 2005). And while the Pennsylvania General Assembly has the authority to waive immunity, it has not done so. 1 Pa.C.S.A. § 2310. 42 Pa.C.S.A. § 8521(b); *Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981).

Accordingly, the Allegheny County Court PFA Unit's motion to dismiss is GRANTED.

## V. Conclusion

For the reasons stated above, the claims against defendant Coates are dismissed for failure to effect service. The motions to dismiss of FCCS, the Franklin County Sheriff's Office and Sheriff Baldwin, Peterman and Allegheny County Court PFA Unit (docs. 15, 16, 34, 35) are granted.

IT IS SO ORDERED.

                                                     s/ James L. Graham
                                                     JAMES L. GRAHAM
DATE: June 9, 2022                              United States District Judge