**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**PASTOR ROSANNA L. COLEMAN, et al.,**

        **Plaintiffs,**

                                       **Civil Action 2:21-cv-2103**

**v.**                               **Judge James L. Graham**
                                        **Magistrate Judge Kimberly A. Jolson**

**ALLEGHENY COUNTY, PA
PFA UNIT, et al.,**

        **Defendants.**

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendants' Motion to Compel Discovery and Extend Dispositive Motion Deadline (Doc. 79). For the following reasons, the Motion is **GRANTED**. Plaintiff is **ORDERED** to sit for a deposition on or before October 26, 2023. The dispositive motion deadline is **EXTENDED** up and until December 11, 2023. Plaintiff is **ORDERED** to pay Defendants' reasonable expenses incurred in making the instant Motion. Defendants are **ORDERED** to produce an itemized list of such expenses and fees to Plaintiff on or before October 26, 2023. Plaintiff shall have 21 days from receipt of the list to pay the award. Additionally, the Clerk is **DIRECTED** to **TERMINATE** Plaintiff's Motion to Clarify (Doc. 78), and Plaintiff's Motion to Leave to File Sur-Reply (Doc. 85).

## I.      BACKGROUND

Plaintiff Rosanna L. Coleman brought this action against Franklin County Children's Services ("FCCS") employee Bryant Dickerson, FCCS employee Rasheye T. Cobb, Franklin County Sherriff's Department ("FCSD") Deputy Sibbalds, and FCSD Deputy Pierce, among other Defendants who have since been dismissed by the District Judge. (Docs. 1, 11); (*see* Docs. 15, 16, 34, 35, 41). At base, Plaintiff's complaint alleges "a violation of the Fourth Amendment with a

nexus to a violation of Due Process . . . and a violation of Privacy Laws, and retaliation against [Plaintiff] for exercising [her] First Amendment Rights."  (Doc. 11 at 1).

Plaintiff says she had custody of her two minor grandchildren, A.C. and C.C., who lived with her.  (*Id.* at 3).  Norman V. Whiteside, a former co-Plaintiff in this action and a "mentor" to the children (*see* Docs. 1, 11, 45, 46), purportedly made a child abuse report against the children's mother, Shanekqua Coates (who is Plaintiff's daughter), in December 2020.  (Doc. 11 at 4). Defendant Dickerson, an employee of FCCS, then interviewed the children and told Coates about the abuse allegation.  (*Id.* at 4–5).  Plaintiff says Coates responded by making a false report to the Allegheny County, PA, Protection from Abuse Unit ("PFA") that she had custody of A.C. and C.C.  (*Id.*).  PFA then allegedly issued a "Protection From Abuse" order against Plaintiff.  (*Id.* at 5).

Then, on December 8, 2020, Defendants Sibbalds and Pierce, at the order of the Franklin County Sheriff, went to Plaintiff's residence and allegedly stated that they had orders to remove the children from the residence.  (*Id.*).  Plaintiff alleges Defendants Sibbalds and Pierce either knew or should have known that this was false and "the documents they presented [to Plaintiff] stated nothing about removing A.C. and C.C."  (*Id*).  So she says that the children's removal by Defendants Sibbalds and Pierce from Plaintiff's residence was an "unlawful seizure."  (*Id.*).

Plaintiff further alleges that "from the time of the unlawful seizure of A.C. and C.C. . . . Defendant Cobb [and] Defendant Dickerson . . . have interfered with [her] lawful custody . . ., and this interference is continuing."  (*Id.*).  From the time of the children's removal, Plaintiff says she was "calling, emailing, and inquiring [about] why she was being kept from seeing A.C. and C.C." (*Id.* at 6).  She says Defendants Dickerson and Cobb retaliated, in violation of the First Amendment, by keeping A.C. and C.C. from her custody and not allowing her to visit them.  (*Id.*

at 5–6). In particular, Plaintiff says Defendant Dickerson did not permit her to see or talk to the children "for months" after Plaintiff attempted to communicate with him about the children. (*Id.* at 6). Similarly, Defendant Cobb purportedly imposed unspecified restrictions on the process to re-establish custody after Plaintiff reported him for "[doing nothing]" to remedy her reports that her daughter was violating visitation orders with the children. (*Id.*).

After the District Judge dismissed several other Defendants from the action (*see* Docs. 15, 16, 34, 35, 41), the parties began discovery, with a deadline of March 17, 2023. (Doc. 44). At this time, Plaintiff was proceeding *pro se*, though she made continual representations to Defendants that she was trying to secure counsel. On January 17, 2023, Defendants served Plaintiff with written discovery requests. (Doc. 79-2). Plaintiff sent her own discovery requests on January 31 and noted that she "may have an attorney in a few days." (Doc. 79-3). Plaintiff then mailed her responses to Defendants' written discovery requests on February 1. (Doc. 79-4). Notably, with regard to all of Defendants' requests for the production of documents, Plaintiff indicated that she would "supplement accordingly when attorney makes appearance[.]" (*Id.* at 10–11).

On March 10, with the original discovery deadline looming—and still without any document production from Plaintiff or a notice that she had retained counsel—Defendants' counsel asked Plaintiff if she would agree to an extension of the discovery deadline. (Doc. 79-5 at 1). Plaintiff said no. (*Id.*).

Days later, Plaintiff's counsel entered his appearance. (Doc. 53). Plaintiff's counsel then sent Defendants audio recordings and indicated he would send "other recordings, photographs and other related items on or before March 17 . . . ." (Doc. 79-6). In response, Defendants' counsel renewed their request to extend the discovery deadline, stating that "receiving only a partial disclosure of responsive documents just four business days before the discovery deadline does not

allow us reasonable time to receive and review all responsive documents in advance of deposing your client." (Doc. 79-7 at 1). Defendants' counsel also stated in the same email that Defendants "intended from the start of this case to depose Ms. Coleman, but had not received all written discovery in order to hold a deposition." (*Id.* at 2). Plaintiff's counsel replied that he had "[n]o objection to extend discovery." (*Id.* at 1). The parties made a joint motion to amend the Court's scheduling order (Doc. 54), and the Court extended the discovery deadline to June 15, 2023. (Doc. 55).

Defendants' counsel emailed supplemental discovery on April 10, and asked about the "other recordings, photographs, and other related items" that Plaintiff's counsel alluded to in his earlier communication, noting that Defendants wished to depose Plaintiff in early May if they received the remaining discovery items. (Doc. 79-8). Defendants' counsel sent follow-up emails on April 18 and May 2 after not receiving a response, citing to the June 15 discovery deadline and their wish to depose Plaintiff before the end of May. (Doc. 79-9). Plaintiff's counsel replied on May 10 that he would speak with Plaintiff about "when a deposition date is most viable" and requested dates to schedule a deposition with Defendants. (Doc. 79-10 at 2). On May 11, Plaintiff's counsel emailed Defendants three dates that Plaintiff could be available for a deposition: May 23, 25, or 26. (Doc. 79-11). Plaintiff's counsel also filed a notice of deposition of Defendants to take place on May 22. (Doc. 56).

Defendants' counsel relayed that his clients were unavailable on May 22. (Doc. 79-12). Plaintiff's counsel responded that he would work with Defendants on scheduling Plaintiff's deposition, but he had conditions. He wanted Plaintiff's deposition to be taken after Defendants had been deposed and insisted that Defendants pay the costs of all depositions. (Doc. 79-13 at 1). Addressing availability only, Defendants' counsel suggested that depositions for all Defendants

4

and Plaintiff take place during the weeks of June 5 or June 11, and requested Plaintiff's availability during that time.  (Doc. 79-14 at 3).  Defendants' counsel sent a follow-up email a couple days later, after receiving no reply.  (*Id.* at 2–3).  Counsel talked on the telephone, and they agreed that Defendants' depositions would not happen on May 22, but the scheduling conversation needed to continue.  (*Id.* at 1–2).

On May 24, Plaintiff's counsel offered June 5 as a date for Defendants' depositions.  (*Id.* at 1).  The next day, Defendants' counsel confirmed the June 5 date worked and requested that the depositions be held at defense counsel's offices.  (Doc. 79-15 at 4–5).  Defendants' counsel waited several days but did not receive a response from Plaintiff's counsel.  So, on May 30, he sent a follow-up email.  (*Id.* at 4).  On May 31, Plaintiff's counsel confirmed the June 5 deposition date, adding that he "presume[d] that your office will be absorbing the costs of these depositions per previous discussions.  If this is not the case, I need to know that as soon as possible."  (*Id.* at 3).  Defendants' counsel responded on May 31 confirming the time and place of the deposition but noted that the defense counsel's office would not pay the deposition costs.  (*Id.* at 2).  In the same email, Defendants' counsel again requested Plaintiff's availability for her own deposition.  (*Id.*).

But Defendants' depositions did not proceed on June 5 as planned.  Instead, Plaintiff's counsel raised a series of objections to the depositions by email that morning.  (Doc. 79-16).  For instance—despite the continual indications that the depositions would occur at defense counsel's offices—Plaintiff insisted that if he was paying for the depositions, they should occur at a location he chose, namely the offices of Armstrong and Okey.  (*Id.* at 3).  Bizarrely, however, he simultaneously represented that those offices were unavailable that day, foreclosing any prospect of proceeding with depositions that day as planned.  (*Id.*).  Defendants' counsel responded that day with a series of unanswered calls and emails, ultimately reminding Plaintiff's counsel that he had

yet to provide dates that Plaintiff could be deposed or provide the supplemental discovery responses Plaintiff's counsel alluded to in his March 13 email.  (Doc. 79-16 at 1–2).  They further suggested that the parties extend the discovery and dispositive motion deadlines "for a couple of months to allow us to get on the same page and complete the discovery without this rush."  (Doc. 79-16 at 2).

Plaintiff's counsel did not respond to any of these communications until after 5:00 p.m., indicating that he was willing to abandon depositions altogether and "move forward with my dispositive motions based upon the information I already have and let the chips fall where they may."  (Doc. 79-17 at 1–2).  The following morning, Defendants' counsel again requested Plaintiff's availability as they tried to depose her before the June 15 discovery deadline.  (*Id.* at 1).  Defendants' counsel stated if they did not receive Plaintiff's availability, they would notice Plaintiff's deposition, and that they further expected the production of supplemental discovery before the deposition.  (*Id.*).  Later that day, Defendants' counsel noticed Plaintiff's deposition for June 14.  (Doc. 61).

On June 7, Plaintiff's counsel emailed that Plaintiff would be unavailable June 4–19 because of a spiritual holy season and because her grandson was out of school.  (Doc. 79-19 at 2).  Defendants' counsel replied that Defendants had "a right to depose your client" and noted that the discovery deadline had not yet passed.  (*Id.* at 1).  Counsel again pleaded for supplemental discovery and for an opportunity to depose Plaintiff before the discovery cutoff, not wanting "to involve the Court in such a simple matter."  (*Id.*).  Plaintiff's counsel did not respond to the requests.  Instead, he filed "Plaintiff's Motion Opposing Further Discovery and Proposed Deposition of Plaintiff."  (Doc. 62).

In response to that Motion, the Court ordered the parties to confer and file a joint status report by June 12, updating the Court about the status of the dispute, as Plaintiff did not represent in the Motion that the parties had exhausted extrajudicial means of resolution for the issue. (Doc. 63). Pursuant to this, on June 9, Defendants' counsel suggested an extension of the discovery deadline to allow time to take Plaintiff's deposition and finalize discovery. (Doc. 79-23 at 3–4). Defendants' counsel sent a follow-up email on June 12 after not receiving a response. (*Id.* at 2). Plaintiff's counsel responded that day, saying that he "feel[s] particularly challenged with the court's mandate to file a joint status report today" and that Plaintiff "will go forward with dispositive motions and let the court know that is our position unless the court instructs otherwise." (*Id.* at 1). The parties subsequently filed status reports that indicated they were unable to resolve their disagreement. (Docs. 64, 65).

After the parties made these reports, the Court again ordered them to file a joint status report, updating the Court on the status of the dispute by June 20 and urged the parties to negotiate an agreeable deposition date for Plaintiff. (Doc. 66). The Order also noted that if "parties are still at an impasse, the Court will order expedited briefing on the Motion, and assess fees against the non-prevailing party in its ruling on the Motion." (*Id.*). In response, Defendants' counsel again asked Plaintiff's counsel to agree to extend deadlines (Doc. 79-24), which the parties did during an in-person meeting. (Doc. 67). Accordingly, on June 21, the Court granted the parties' request to extend the deadlines to August 14 for discovery and September 25 for dispositive motions. (Doc. 68). The Court also denied Plaintiff's motion opposing further discovery and proposed deposition as moot. (*Id.*).

On June 23, Plaintiff's counsel requested a copy of documents "the officers had in hand from the Pennsylvania court when they appeared at my client's home . . . ." (Doc. 79-25 at 4).

Defendants' counsel sent a copy of the protection order, though he said it had already been provided to Plaintiff. (*Id.* at 3). He also requested supplemental discovery and Plaintiff's availability for her deposition. (*Id.*). A week passed without response, and Defendants' counsel sent a follow-up email. (*Id.* at 2). Plaintiff's counsel responded the next day that he was "being asked to present that which I have already presented." (*Id.* at 1). On July 27, Plaintiff's counsel sent another email repeating this sentiment and requested possible dates for Defendants' depositions. (Doc. 79-26 at 1). About a week later, Defendants' counsel contacted Plaintiff's counsel offering to hold Defendants' depositions on August 16 or 17 and asking if August 16, 17, or 18 would work for Plaintiff's deposition. (Doc. 79-27 at 1–2). After not receiving a response for two weeks, Defendants' counsel sent yet another follow-up email on August 11. He proposed eight additional dates for Defendants' depositions (August 21, 22, 23, 24, 28, 29, 30, and 31). (*Id.* at 1). And he again asked when he could depose Plaintiff. (*Id.*).

On August 14, the discovery deadline, Plaintiff's counsel emailed Defendants' counsel noting that it was difficult for him to communicate with three different lawyers on the defense's team. (Doc. 79-28 at 1–2). Plaintiff's counsel also asked for Defendants' counsel to respond to other discovery issues he considered not properly addressed, conditioning "set[ting] up any depositions with your clients or mine" on receiving the information. (*Id.*). The same day, Defendants' counsel asked for clarification about these discovery issues and again requested dates for Plaintiff's deposition. (*Id.* at 1). The next day, Plaintiff's counsel responded that he wanted to know "WHO gave Mr. Pierce and/or Mr. Sibbalds the papers they took to 2439 Melrose on the subject date." (Doc. 79-29 at 1–2). Plaintiff's counsel further stated, "before I can provide any dates for depositions, I need someone to respond to this very simple, straightforward question . . . after I receive the answer to my question and the copies [of the orders] I am requesting, we can get

to the deposition dates." (*Id.* at 2).  Defendants' counsel replied that they had previously given Plaintiff copies of the relevant documents and that Defendants could tell Plaintiff who gave them the orders in a deposition. (*Id.* at 1).  In the same email, Defendants' counsel again requested Plaintiff's availability to be deposed. (*Id.*).

On August 16, after the discovery deadline passed, Plaintiff's counsel responded that he "[didn't] need to wait for a Deposition" to know the answers to his questions, seemingly implying that Defendants' counsel could supply the answers he sought. (Doc. 79-30 at 5–6).  On the same day, Defendants' counsel advised Plaintiff's counsel that they would not "informally provide you the facts of the incident" and again requested dates for Plaintiff to be deposed. (*Id.* at 5).  The next day, Plaintiff's counsel replied that he had "been trying to schedule the depositions since my entering this case" yet argued that he needed to know the requested facts before depositions occurred. (*Id.* at 3–4).  Defendants' counsel again responded that Plaintiff should depose Defendants for the facts. (*Id.* at 2–3).  Defendants' counsel once again asked for dates for Plaintiff to be deposed. (*Id.* at 3).  On August 25, Defendants' counsel repeated this request, saying that he would "strongly prefer not to involve the Court in this dispute, but it appears that you are simply refusing to allow her to be deposed" and noting that the request for potential deposition dates pre-dated the original and extended discovery deadlines. (*Id.* at 1).  Plaintiff's counsel replied that he received the request for deposition dates on August 14 and the discovery deadline was August 15 (which was untrue in both respects), so was "time-wise prevented from further discovery." (*Id.*).

On August 29, Defendants' counsel sent an email, that Plaintiff's counsel was copied on, to the Court's Courtroom Deputy describing the discovery dispute. (Doc. 79-31).  On August 30, the Court ordered the parties to file a status report by September 5 describing if the dispute had been resolved and setting a briefing schedule for a motion to compel if it was not. (Doc. 72).  The

Court noted that in ruling on the potential Motion, the Court intended to award fees against the non-prevailing party. (*Id.*).

The same day, Defendants' counsel emailed a request to depose Plaintiff at a time and location convenient for Plaintiff. (Doc 79-32). Defendants' counsel also proposed a 45-day extension to the dispositive motion deadline after all depositions were completed. (*Id.*). Plaintiff's counsel responded, rejecting both the deadline extension and Defendants' counsel's efforts to schedule depositions. (Doc. 79-33 at 1–2). Plaintiff's counsel also attached an August 11 letter from Plaintiff to Defendants' counsel in which she "expressed her willingness to cooperate with discovery." (*Id.* at 1). The letter, sent using a certificate of mailing rather than by certified mail, stated that she was unavailable for a deposition on August 23 when her grandson started school and after August 28 when she started school. (*Id.* at 4). She also expressed skepticism that any deposition would occur stating, "unless you know some way to take my deposition on August 13, 2023, I will not adjust my schedule again." (*Id.*). However, Defendants' counsel did not personally receive the letter before filing the instant Motion and was not made aware of its existence until this email. (Doc. 79-34). Subsequently, the parties filed status reports informing the Court that they had not resolved their discovery dispute. (Docs. 74, 75, 76).

Now, Defendants have filed the present Motion to Compel Plaintiff's Deposition and to Extend the Deadline for Dispositive Motions. (Doc. 79). The Motion is fully briefed (Docs. 80, 82, 83) and is ripe for consideration.

## II.   STANDARD

Three federal rules matter here. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Rule 30 of the Federal Rules of Civil Procedure provides that "[a] party may, by oral questions, depose any person, including a party without leave of court except as provided in 30(a)(2)." Fed. R. Civ. P. 30(a)(1). Finally, Rule 37 allows for a party seeking discovery to move for an order to compel that discovery. Fed. R. Civ. P. 37(a)(1). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

Finally, Rule 37 provides that if a motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The rule further provides that a court must not order the payment if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; the opposing party's nondisclosure, response or objection was substantially justified; or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).

## III.    DISCUSSION

Defendants ask the Court to compel Plaintiff to attend a deposition.  (Doc. 79 at 16).  They maintain that Plaintiff's counsel has "refused to meaningfully provide dates to schedule Plaintiff's deposition" despite being on notice that Defendants wished to depose Plaintiff.  (*Id.* at 15).  Particularly, Defendants represent that Plaintiff's counsel has "blocked efforts to depose [Plaintiff] at every turn." (*Id.*).  Plaintiff responds that Plaintiff has not refused to be deposed generally but rather refused specific dates because they were inconvenient or were beyond the discovery deadline.  (Doc. 82 at 7–9).  For the following reasons, the Court agrees with Defendants.

First, it is undisputed that Plaintiff's testimony is relevant to and proportional to the needs of the case.  Plaintiff alleges that Defendants violated her constitutional rights, and Defendants wish to defend themselves against the allegations.  Deposing the plaintiff in a case is a common and routine method of discovery.  Indeed, an individual should expect to be deposed when she brings a lawsuit.  As such, Rule 26 and Rule 30 allow for Defendants to obtain discovery by way of a deposition of Plaintiff.  Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 30(a)(1).  Moreover, Plaintiff has offered no reason as to why her testimony is not relevant and proportional to the needs of the case.

Second, Defendants provided reasonable notice regarding their intent to depose Plaintiff and desperately tried to do so before the discovery deadlines.  (*See generally* Docs. 55, 68).  Defendants' counsel stated as much in their first email to Plaintiff's counsel after he noticed his appearance in the case.  (Doc. 79-7 at 2).  In fact, before the most recent discovery deadline expired, Defendants' counsel had asked about Plaintiff's availability at least 10 times.  (*See* Docs. 79-8, 79-9, 79-15, 79-16, 79-17, 79-23, 79-24, 79-25, 79-27).  Still more, defense counsel tried again and

again to resolve the discovery dispute without Court intervention. (*See* Docs. 79-28, 79-29, 79-30).

It may be true that Plaintiff's counsel did not expressly say, "I refuse to make Plaintiff available," but Plaintiff's counsel's actions said as much. He generally did not address the request for dates in his replies (*See e.g.*, Doc. 79-25 at 1), or offered only dates that had long since passed. (*See e.g.*, Doc. 79-19 at 2). And while Plaintiff's counsel did provide Plaintiff's availability for a handful of dates at the end of May (Doc. 79-11), the deposition did not happen because of Plaintiff's counsel's insistence that Defendants' depositions occur before Plaintiff's on a day when Defendants were unavailable. (Docs. 79-10, 79-11, 79-12, 79-13, 79-14). Notably, Plaintiff's counsel did not provide Defendants' counsel with more potential dates despite Defendants' counsel's repeated requests.

Further, Plaintiff cannot contend that her August 11 letter changes this. First, she sent the letter using a certificate of mailing rather than certified mail, so Defendants' counsel was not notified when the letter arrived at their office, nor did they personally sign for the letter. Second, Defendants' counsel had no reason to expect or look for a letter from Plaintiff, who had long since been represented by counsel. Third, even if Defendants' counsel received the letter in a timely manner, the letter was sent three days before the most recent discovery deadline and only expressly provided dates when Plaintiff was *unavailable*. (Doc. 79-33 at 4). She hinted that she might be available on August 13, but that was not even clear. (*Id.*). Fourth, and most importantly, the letter does not compensate for the numerous instances, discussed in detail here, when Plaintiff and her counsel created barriers to scheduling Plaintiff's deposition.

Plaintiff attempts to explain her most recent failure to comply with her obligation to be deposed as observance of the Court's discovery deadline of August 14. (Doc. 82 at 8–9); (*see* Doc

79-27 at 1).  This holds little sway, as Plaintiff's counsel himself continued to communicate about other discovery matters after August 14.  (Doc. 79-30).  Still more, Plaintiff's lack of cooperation started long before the August 14 deadline passed.  Plaintiff's counsel premised his client's deposition on Defendants' depositions with little notice, created barriers for holding Defendants' June 5 depositions in the eleventh hour without excuse, and unilaterally decided to abandon scheduling Defendants' depositions, which he required before Plaintiff's deposition, in favor of "let[ting] the chips fall where they may."  (Docs. 79-13, 79-15, 79-17 at 1–2).  Simply put, Defendants were ready and able to conduct Plaintiff's deposition for many months.  And even after the deadline passed as Defendants attempted to work towards an extrajudicial solution, Plaintiff's counsel claimed to have already produced available dates (though those dates had, by that time, long passed), altogether ignored requests for available dates, or conditioned their provision on Defendants' counsel providing him other case-related information.  (*See* Docs. 79-29, 79-30).  It is clear that Defendants would have deposed Plaintiff long ago had Plaintiff's counsel not stymied their efforts.

Lastly, the Court addresses fees.  Previously, the Court noted its intention to assess how the parties' respective conduct necessitated the need for this Motion and award fees accordingly. (Doc. 77).  In granting a motion to compel discovery, the Court must require the party whose conduct necessitated the motion to "pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  The only exceptions under the Rule are when the movant made the motion before attempting to obtain the discovery in good faith without court intervention, if the opposing party's objection was substantially justified, or if the award of expenses would be unjust based on other circumstances.  Fed. R. Civ. P. 37(a)(5)(A)(i)– (iii).  Substantially justified has elsewhere been defined as raising an issue about which "there is a

genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Doe v. Lexington-Fayette Urban Cty. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

No exception applies here. Defendants filed the Motion after months of attempting, in good faith, to schedule Plaintiff's deposition. Defendants even made use of the Court's informal discovery mechanisms. But when none of those worked, Defendants had no recourse but to file the Motion. And Plaintiff's actions in thwarting her deposition were not substantially justified. To the contrary, it was unreasonable for Plaintiff not to make herself available to be deposed. Finally, it is not unjust to award expenses for Defendants' efforts. At many points, Plaintiff and her counsel had the chance to cooperate and were even told to do so by the Court. Instead, the record shows that they have made discovery difficult and tedious. Accordingly, under Rule 37(a)(5)(A), the Court awards Defendants their reasonable costs in preparing the instant Motion.

Finally, the Court addresses two outstanding motions. Plaintiff filed a Motion to Clarify (Doc. 78), and a Motion to Leave to File Sur-Reply (Doc. 85). Despite their titles, both filings contain additional arguments for why the Motion to Compel should not be granted. The Court has considered the arguments, but they do not affect the disposition of the Motion to Compel. Consequently, the Clerk is **DIRECTED** to **TERMINATE** Motion to Clarify (Doc. 78), and Plaintiff's Motion to Leave to File Sur-Reply (Doc. 85).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Discovery and Extend Dispositive Motion Deadline (Doc. 79) is **GRANTED**. Plaintiff is **ORDERED** to sit for a deposition on or before October 26, 2023. The dispositive motion deadline is **EXTENDED** up and until December 11, 2023. Plaintiff is **ORDERED** to pay Defendants' reasonable expenses

incurred in making the instant Motion.  Defendants are **ORDERED** to produce an itemized list of such expenses and fees to Plaintiff on or before October 26, 2023.  Plaintiff shall have 21 days from receipt of the list to pay the award.  Additionally, the Clerk is **DIRECTED** to **TERMINATE** Plaintiff's Motion to Clarify (Doc. 78), and Plaintiff's Motion to Leave to File Sur-Reply (Doc. 85).

        IT IS SO ORDERED.

Date:  October 5, 2023          /s/ Kimberly A. Jolson
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE