IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Pastor Rosanna L. Coleman and
Minister Norman V. Whiteside,

        Plaintiffs,

v.

Allegheny County, PA PFA Unit, *et al.*,

        Defendants.

Case No: 2:21-cv-2103

Judge Graham

Magistrate Judge Jolson

<u>Opinion and Order</u>

Plaintiff Rosanna Coleman, a resident of Franklin County, brings this action under 42 U.S.C. § 1983 relating to the removal of her two minor grandchildren from her custody pursuant to a Protection From Abuse ("PFA") Order issued by a Pennsylvania state court judge. Named as defendants are Bryan Sibbalds and Ronald Pierce, who are the Franklin County Sheriff's deputies who executed the order to remove the children, and Bryant Dickerson and Rasheye Cobb, the Franklin County Children Services ("FCCS") caseworkers who were assigned to the children after their removal.

This matter is before the Court on the motion of defendants for summary judgment. Defendants argue that they properly performed their limited roles in the matter, fully complied with the law, and did not violate any of Coleman's rights. For the reasons set forth below, the Court agrees and grants summary judgment to defendants.

**I.    Background**

    **A.    Facts**

The following facts are not in dispute. In late 2020, Coleman had custody of the two minor children of her adult daughter Shanekqua Coates, who resided in Allegheny County, Pennsylvania. Coates initiated an emergency PFA proceeding against Coleman in Pittsburgh Municipal Court. On December 7, 2020, following a hearing, the Pittsburgh Municipal Court issued a PFA Order which ordered Coleman to refrain from having contact with the two minor children. *See* Doc. 91-2.

At the time, Deputies Sibbalds and Pierce worked in the Civil Division of the Franklin County Sheriff's Office. *See* Sibbalds Aff. ¶ 3; Pierce Aff. ¶ 3. The Civil Division is responsible for serving process and other court documents within Franklin County; this includes serving court orders received from jurisdictions outside of Franklin County. *See* Burns Aff. ¶¶ 3–4. Once support staff in the Sheriff's Office verify that court orders are valid, deputies are assigned to serve and execute the orders. *Id.*, ¶¶ 5–6.

On December 8, 2020, Sibbalds and Pierce were assigned to serve and execute the PFA Order. *See* Sibbalds Aff. ¶ 5; Pierce Aff. ¶ 5. They were given the address of Coleman's residence in Columbus. When they arrived at the residence, they served Coleman with the PFA Order and made contact with the two children. *See* Sibbalds Aff. ¶ 7; Pierce Aff. ¶ 7. Also present in the residence was Norman Whiteside, whom Coleman describes as her "minister/counselor" and the children's mentor. *See* Coleman Dep. at 30, 38 (testifying that Whiteside had an office in her house).

The PFA Order did not direct where the children should be taken upon their removal from Coleman. Sibbalds and Pierce spoke at length to Coleman, Whiteside, and the children, and were advised that the children would not be safe if returned to Coates, who had allegedly physically abused them. Sibbalds and Pierce called their supervisor and confirmed that they should follow the default rule of taking the children to FCCS. Sibbalds and Pierce then took the children to FCCS and had no further contact with Coleman or the children. *See* Sibbalds Aff. ¶¶ 8–16; Pierce Aff. ¶¶ 8–15.

Defendant Dickerson was an intake caseworker. On December 8, 2020, he was informed that the children had been removed by the Sherriff's Office pursuant to a protection order. *See* Dickerson Aff., ¶ 7. After FCCS received the two children, Dickerson discussed the matter with his supervisor and FCCS's legal department. A complaint alleging abuse and/or neglect by Coleman was prepared, and Dickerson filed the complaint in the Franklin County Court of Common Pleas. *See id.*, ¶¶ 8–9. After a hearing, the Court of Common Pleas issued an order on December 10, 2020 giving FCCS temporary custody of the children. *See* Doc. 95-6. Coleman was represented by legal counsel and attended the December 10 hearing. *See id.*; Doc. 91-5.

FCCS internally transferred its case from the Intake Department to the East Region Family Services Division on December 17, 2020. *See* Dickerson Aff., ¶ 12; Drumm Aff., ¶¶ 3, 10. The East Region Family Services Division is one of FCCS's Divisions which provides ongoing case management services to clients, including referring clients to services, preparing and implementing case plans, and maintaining regular contact with children and families. *See* Drumm Aff., ¶¶ 3, 5.

2

After the case was transferred to the East Region Family Services Division, Dickerson had no further involvement in the matter and no contact with Coleman. *See* Dickerson Aff., ¶ 12.

Defendant Cobb was assigned to the children's case as an ongoing caseworker. *See* Drumm Aff., ¶ 10. Cobb first made contact with Coleman on December 29, 2020 to introduce herself to Coleman and discuss custody documents which Coleman stated she had. *See id.*, ¶ 11. During this time, the children were in "kinship care," whereby FCCS placed them with a relative in Franklin County. *See* Dickerson Aff., ¶ 7. Coleman requested to visit the children, but Cobb explained that she could not visit them so long as the PFA Order was in effect. *See* Doc. 91-1 at PAGEID 730–33 (January 2021 emails).

On February 8, 2021, Ivy Pinkins, who was Cobb's supervisor, spoke with Coleman over the phone about her requests to see the children and said that FCCS's legal department was checking to see when the PFA Order would expire. *See* Drumm Aff., ¶ 12. On the next day, FCCS's legal department verified that the PFA Order had expired.[1] Pinkins then informed Coleman that they could schedule her to have visitations with the children. *See id.*, ¶ 13.

On February 11 and 16, 2021, Coleman had a visitation at the children's kinship placement. *See id.*, ¶ 14. Because concerns were raised about Coleman's conduct during the visits – including her trying to make recordings of the visits – Cobb notified Coleman that future visitations would take place at FCCS. *See id.*, ¶ 15. Coleman had a visitation with both children at FCCS on February 24, 2021. *See id.*, ¶ 16.

The Franklin County Court of Common Pleas granted Coleman temporary custody of one of the children on February 25, 2021. *See* Doc. 95-9. The other child remained in kinship care under the custody of FCCS. *See id.*; Doc. 95-10 (explaining that the separation was due to aggressive behavior between the children towards each other). Coleman continued to have regular visits with the child who was not in her custody. *See* Drumm Aff., ¶¶ 17–18.

Cobb maintained contact with Coleman and made visits with her and each of the children as part of her caseworker duties. *See id.*, ¶ 19. Cobb's involvement ended on November 10, 2021 when the Franklin County Court of Common Pleas dismissed the case upon a motion to dismiss filed by FCCS. *See* Doc. 95-11; Drumm Aff., ¶ 20.

**B.      Procedural History**

Coleman and Whiteside brought this action, proceeding *pro se*, against numerous defendants. In addition to the remaining defendants, plaintiffs brought suit against the "Allegheny County Court

---

[1] The record is silent as to exactly when the PFA Order expired.

3

PFA Unit," the Franklin County Sheriff's Office, Franklin County Sheriff Dallas Baldwin, FCCS, Shanekqua Coates, and the children's guardian *ad litem*. Following the Court's decision on several motions to dismiss, only the claims against Sibbalds, Pierce, Dickerson, and Cobb remained.[2] *See* Doc. 41. Whiteside then moved to voluntarily dismiss the claims he had brought. The Court granted the unopposed motion and dismissed Whiteside's claims with prejudice. *See* Doc. 46.

The complaint alleges that Sibbalds and Pierce's removal of the children was unlawful because the PFA order was "bogus" and they knew they lacked the authority to remove the children from Coleman's home. The complaint further alleges that Coleman protested the children's removal and that Dickerson and Cobb retaliated against her by preventing her from visiting the children.

Coleman obtained legal counsel, and discovery proceeded as to the remaining claims. After the close of discovery, defendants moved for summary judgment. Still represented by counsel, plaintiff opposed the motion. Plaintiff's counsel, however, has since withdrawn from representation with the Court's approval. *See* Doc. 102.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is

---

[2] These defendants did not move to dismiss the claims against them.

4

[more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

### III. Discussion

The complaint asserts that defendants committed violations of Coleman's rights under the United States Constitution. She alleges that the removal of the children from her home by defendants Sibbalds and Pierce constituted an unreasonable seizure under the Fourth Amendment. She further alleges that the retaliatory efforts of Dickerson and Cobb to prevent her from visiting the children violated the First Amendment.

A plaintiff asserting a § 1983 claim for damages against a state official must establish that: (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Courts may address these prongs in either order, and either one may be dispositive. *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012).

#### A. Defendants Sibbalds and Pierce

The Fourth Amendment protects citizens against unreasonable searches and seizures. It is clearly established that the Fourth Amendment applies to the removal of children from their homes. *See Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 699 (6th Cir. 2013); *Stephens v. Hamilton Cnty. Jobs & Fam. Servs.*, 46 F.Supp.3d 754, 762 (S.D. Ohio 2014).

"'In the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent

5

circumstances, meaning that state officers have reason to believe that life or limb is in immediate jeopardy.'" *Stephens*, 46 F.Supp.3d at 762 (quoting *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 474 (7th Cir. 2011)) (internal quotation marks omitted).

It is undisputed that Sibbalds and Pierce removed the children from plaintiff's home pursuant to a court order. But in both her complaint and brief in opposition to the motion for summary judgment, plaintiff calls the PFA Order "bogus." She makes several contentions in support: (1) the Order did not actually mandate the removal of the children from Coleman's home; (2) the Order did not comply with Ohio law; and (3) the Order had expired.[3]

The Court finds that plaintiff, while calling the PFA Order bogus, has not made any showing that it was invalid as issued. The PFA Order was signed and sealed by a judge of the Pittsburgh Municipal Court and is thus self-authenticating. *See* Fed. R. Evid. 902(1). Plaintiff's arguments instead go to whether defendants acted unreasonably in executing the PFA Order in a manner outside the scope of its lawful application.

First, plaintiff contends that the PFA Order did not order the removal of the children from her home. It is true that on its face the Order did not specifically mention plaintiff's home or the children's removal. It stated: "The defendant is ordered to refrain from contacting the individuals [the children] named above." Doc. 91-2. However, the Court agrees with defendants that, given the children were living with plaintiff in her home, the only reasonable way for them to carry out the Order was to remove the children from the home. Plaintiff offers no argument to the contrary.

Second, plaintiff argues that defendants should have refused to execute the PFA because they should have known that it did not comply with Ohio law. Plaintiff cites to various sections of Chapter 2329 of the Ohio Revised Code, which she argues impose certain requirements on foreign judgments which the PFA Order failed to satisfy. This argument is meritless, as Chapter 2329 is entitled "Execution Against Property" and its provisions plainly relate to judgment liens on lands and tenements, bonds for the delivery of goods and chattels, and so forth. Chapter 2329 does not apply to protection orders concerning persons.

Third and finally, plaintiff argues that Sibbalds and Pierce should have refrained from executing the PFA Order because it had expired. This argument fails as well. On its face, and under

---

[3] Plaintiff's brief also argues that a separate PFA Order which was simultaneously issued by the Pittsburgh Municipal Court against Whiteside was invalid because such orders cannot be issued under Pennsylvania law against persons who are not family members. Whiteside is no longer a plaintiff, and the Court finds that the issue of the validity of the PFA Order against Whiteside is irrelevant to the remaining issues in this case.

Pennsylvania law, the PFA Order remained in effect until the issuing court was available to conduct a further hearing. *See* Doc. 91-2; 23 Penn. Stat. Ann. § 6110(b). The Order was issued on December 7, 2020, and defendants executed the Order at 1:00 p.m. on December 8, 2020. *See* Sibbalds Aff. ¶ 6; Pierce Aff. ¶ 6. Plaintiff has not submitted any evidence that the PFA Order had expired before that time.[4]

Accordingly, the Court finds that defendants Sibbalds and Pierce are entitled to summary judgment because plaintiff has not put forth evidence from which a jury could reasonably find that defendants violated the Fourth Amendment.

**B.  Defendants Dickerson and Cobb**

Plaintiff must establish three elements to support a First Amendment retaliation claim: (1) plaintiff engaged in protected conduct; (2) an adverse action was taken against plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) a causal connection exists between the protected conduct and the adverse action – that is, "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, plaintiff alleges that she engaged in protected activity by opposing the children's removal and seeking to have visitations with them. For purposes of the motion for summary judgment, defendants do not dispute that plaintiff engaged in protected activity. Plaintiff alleges that Dickerson and Cobb then retaliated against her by preventing her from having "any contact" with the children. Doc. 99 at PAGEID 884.

**1.  Dickerson**

The Court finds that Dickerson is entitled to absolute immunity. The Sixth Circuit has held that social workers are entitled to absolute immunity from § 1983 liability when they engage in conduct "intimately associated" with judicial proceedings. *Pittman v. Cuyahoga Cnty. Dep't of Children & Fam. Servs.*, 640 F.3d 716, 724 (6th Cir. 2011). Immunity for social workers is akin in scope to prosecutorial immunity: "[S]ocial workers are absolutely immune only when they are acting in their capacity as *legal advocates*—initiating court actions or testifying under oath—not when they are performing administrative, investigative, or other functions." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (emphasis in original).

---

[4] Plaintiff's argument appears to stem from her mistaken personal belief that the PFA Order expired within 24 hours of its issuance. *See* Coleman Dep. at 21, 35.

7

Dickerson has submitted evidence that his involvement with plaintiff's ability to have contact with the children was limited to filing a complaint in the Franklin County Court of Common Pleas for FCCS to gain temporary custody of the children. *See* Dickerson Aff., ¶¶ 8–9, 12. Plaintiff offers no evidence or argument to the contrary.[5] Accordingly, the Court finds that Dickerson, in filing the court action, was acting in his capacity as a legal advocate and is absolutely immune.

**2. Cobb**

Plaintiff asserts that Cobb prevented her from having any contact with the children. Attached to the motion for summary judgment is a 45-page log of the many visits Coleman had with the children from February to November 2021 while Cobb was assigned as the caseworker. *See* Doc. 96. Plaintiff has not responded with evidence of any particular instances of when she made visitation requests which Cobb denied or limited during this time frame.

In her deposition, plaintiff stated that Cobb kept her from seeing the children "by telling me I had a Civil Protection Order on me." Coleman Dep. at 84. This apparently refers to an earlier time frame – the period from December 29, 2020 (when Cobb first made contact with Coleman) to February 9, 2021 (when Cobb's supervisor informed Coleman that the PFA Order had expired). Attached as an exhibit to plaintiff's deposition are two emails from January 2021. In both emails, Cobb was responding to Coleman's requests to see the children. *See* Doc. 91-1 at PAGEID 730–733. Cobb responded that the PFA Order required Coleman "to stay away from [the children]," but she was "waiting to hear back from Legal" and would let Coleman know "as soon as possible" when visitations could be scheduled. *Id.*

The Court finds that Cobb is entitled to summary judgment because plaintiff has failed to submit any evidence to support an inference that Cobb acted with a retaliatory motive. The only motive or reason supported on the summary judgment record for why Cobb did not allow Coleman to visit the children in January 2021 was the existence of the PFA Order. Plaintiff has not submitted any evidence to suggest that Cobb had reason to believe that the PFA Order was no longer in effect. Once Cobb learned through FCCS's legal department that the PFA Order had expired, she immediately scheduled a visit for Coleman with the children on February 11, 2021. *See* Drumm Aff., ¶¶ 13, 14; Doc. 96 at PAGIED 839–841.

---

[5] Coleman was asked in her deposition what retaliatory acts Dickerson took against her, and she stated that he retaliated against her "by going to court" and by sending her purported custody papers to FCCS's legal department. Coleman Dep. at 83, 91. Her testimony does not point to any actions Dickerson took outside of his capacity as a legal advocate.

**IV.     Conclusion**

For the reasons stated above, the motion for summary judgment of defendants Sibbalds, Pierce, Dickerson, and Cobb (Doc. 95) is GRANTED.  The Clerk of Court is instructed to enter final judgment for all defendants.


DATE: August 7, 2024

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge